O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

2002 WL 1941179
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Aror Ark O'DIAH, Plaintiff,
v.
NEW YORK CITY, the Puro Water Group, Richard Ehlers, New York State, Nassau County, Tsunis & Gasperis, Sears Roebuck and Company, Village of Flower Hill, New York State Department of Motor Vehicles, PA Transit Port Authority of Allegheny County in Pittsburgh, Equifax Credit Information, Experian, IPC International Corp., Trans Union, Allied Spectaguard, Collecteck, Inc., Credit Management Company, Mercy Hospital of Pittsburgh, South Hills Ent., I.C. Systems, Inc., Jae Chil Kim Rehab., Ford Motor Credit Corporation, Michigan State University, Pierce Hamilton and Stern, Northern Glen Apartment Homes, Volkswagen Credit Inc., Volkswagen of America Inc., Nassau County Attorney, Nassau District Attorney, the United States Court of Appeals for the Second Circuit, NCO Financial Systems, Mercy Providence, New York State Workers Compensation Board, Braunstein and Chase, L.L.P., City of Boston, U.S. Filter Inc., Piping Rock Natural Water, and Leonard Wexler, Defendants.

No. 02 CIV. 274(DLC).
|
Aug. 21, 2002.

Action was brought against private and public entities asserting statutory and constitutional claims, as well as claims for harassment and libel, arising from alleged conspiracy to discriminate against and harass plaintiff based on race, national origin, Christian values, and Republican party affiliation. On defendants' motion to dismiss, the District Court, Cote, J., held that: (1) res judicata barred pursuit of some, but not all, claims; (2) sovereign immunity protected New York Department of Motor Vehicles (DMV) and Workers' Compensation Board from liability; (3) conclusory allegations regarding conspiracy between private defendants and public officials failed to state § 1983 conspiracy and civil rights conspiracy claims; (4) private right of action against furnishers of credit information did not exist under Fair Credit Reporting Act (FCRA); (5) supplemental jurisdiction would not be exercised over state law claims; and (6) issuance of filing injunction against plaintiff would be proper.

Motions granted in part and denied in part.

West Headnotes (26)

[1]     **Judgment**
        👉 Want of prosecution
        **Judgment**
        👉 What constitutes identical causes

        Former employee's claim against former employer and related entities had to be dismissed on ground of res judicata; earlier action against a related entity had been dismissed for failure to prosecute, a final adjudication on merits, and factual allegations in the complaints indicated that former employee was targeting the same alleged conduct.
        Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A.

        Cases that cite this headnote

[2]     **Judgment**
        👉 Involuntary dismissal or nonsuit in general

        Res judicata would bar former employee from pursuing wrongful termination claims against former employer, although in employee's prior wrongful termination action against employer district court had failed to enter order dismissing all claims with prejudice for failure to replead within 30 days; in prior action, the claims were dismissed with permission to replead within 30 days, and former employee failed to comply with the order, and the order warned that dismissal of the action could result.
        Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A.

        1 Cases that cite this headnote

[3]     **Judgment**
        👉 What constitutes identical causes

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

**Judgment**
👉 Theory of action or recovery

Claims asserted against port authority, arising from port authority's alleged failure to pay medical bills incurred as result of bus accident, would be barred by res judicata; the wrong for which redress was sought, material facts and necessary evidence, and theory of recovery were identical to prior state action against port authority.

Cases that cite this headnote

[4] **Federal Courts**
👉 Agencies, officers, and public employees

New York State Department of Motor Vehicles (DMV) and Workers' Compensation Board were protected by sovereign immunity from § 1983 claims arising from DMV's alleged conspiracy to issue traffic tickets to plaintiff and alleged denial of plaintiff's right to equal access to Workers' Compensation Board forum; DMV and the Board were state entities, for purposes of sovereign immunity, and the Civil Rights Act and § 1983 did not abrogate sovereign immunity. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983; Civil Rights Act of 1964, § 201 et seq., 42 U.S.C.A. § 2000a et seq.

2 Cases that cite this headnote

[5] **Federal Courts**
👉 Abrogation by Congress

Fair Credit Reporting Act (FCRA) could not abrogate sovereign immunity, since Congress enacted the FCRA pursuant to Commerce Clause authority. U.S.C.A. Const. Art. 1, § 8, cl. 3; U.S.C.A. Const.Amend. 11; Consumer Credit Protection Act, § 602 et seq., as amended, 15 U.S.C.A. § 1681 et seq.

7 Cases that cite this headnote

[6] **Conspiracy**
👉 Persons Liable

New York, New York Department of Motor Vehicles (DMV), and New York Workers' Compensation Board were not "persons" under civil rights conspiracy statute, as required to support civil rights conspiracy claims. 42 U.S.C.A. § 1985.

Cases that cite this headnote

[7] **Federal Civil Procedure**
👉 Effect
**Judges**
👉 Liabilities for official acts

Judge's actions would be protected by absolute immunity from civil liability arising from his judicial acts in landlord and tenant dispute, and thus, to extent former tenant named village as defendant in action to address alleged judicial misconduct in landlord and tenant dispute, claims against village had to be dismissed with prejudice.

Cases that cite this headnote

[8] **Federal Courts**
👉 Particular cases

Diversity jurisdiction did not exist over New York resident's claims in federal district court, where at least seven defendants named in action were also New York residents.

Cases that cite this headnote

[9] **Conspiracy**
👉 Pleading

Conclusory allegations regarding conspiracy between private defendants and public officials

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

failed to state § 1983 conspiracy claim against private defendants, for alleged discrimination and harassment based on race, national origin, Christian values, and Republican party affiliation; no details of time and place were provided, and the factual basis necessary to enable the defendants to intelligently prepare their defense was not described. 42 U.S.C.A. § 1983.

2 Cases that cite this headnote

[10]     **Civil Rights**
         👉 Arrest, search, and detention

*Monell* claim was not stated against municipal defendants, in action alleging false arrest and imprisonment, police brutality, and police harassment claims, absent factual allegations mentioning that municipalities espoused practice or custom of such behavior. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

Cases that cite this headnote

[11]     **Civil Rights**
         👉 Police, Investigative, or Law Enforcement Activities

Robbery victim failed to identify federal law violated by county district attorney who failed to provide victim with contact information for robbers, as required for victim to state § 1983 claim against county district attorney. 42 U.S.C.A. § 1983.

Cases that cite this headnote

[12]     **Conspiracy**
         👉 Pleading

Civil rights conspiracy claim, arising from alleged conspiracy to deprive plaintiff of his constitutional rights and property based upon his

Christian values, moral views, political affiliation with Republican party, national origin, and race, primarily occurring through dissemination of false credit information, was not stated, absent facts demonstrating agreement between any named defendants, when or where any agreement was made, or precise nature of such agreement. 42 U.S.C.A. § 1985.

Cases that cite this headnote

[13]     **Federal Civil Procedure**
         👉 Pleading over

Leave to replead civil rights conspiracy claims against public and private defendants would not be proper, although plaintiff was pro se; motions to dismiss claims set out in detail the pleading inadequacies, plaintiff submitted an opposition and unauthorized sur-reply which repeated conclusory allegations of the complaint, and plaintiff had already been given chance to replead conspiracy claim. 42 U.S.C.A. § 1985.

Cases that cite this headnote

[14]     **Credit Reporting Agencies**
         👉 Actions by or against agency;  injunction

Private right of action against furnishers of credit information did not exist under Fair Credit Reporting Act (FCRA) subsection relating to furnishers' duty to report accurate information and ongoing duty to correct inaccurate information. 15 U.S.C.A. § 1681s-2(a).

8 Cases that cite this headnote

[15]     **Civil Rights**
         👉 Attorneys and witnesses

Plaintiff failed to state claim against law firm, under Civil Rights Act, absent allegations of

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

state action on part of law firm that would sustain a due process or equal protection **claim**. Civil Rights Act of 1964, § 201 et seq., 42 U.S.C.A. § 2000a et seq.

Cases that cite this headnote

[16]   **Fraud**
👉Fiduciary or confidential relations

Port authority was not in fiduciary relationship with passenger on port authority bus, as required to support passenger's breach of fiduciary duty **claim** arising from port authority's alleged breach of a promise to pay all medical expenses incurred following an accident.

Cases that cite this headnote

[17]   **Fraud**
👉Fiduciary or confidential relations

Judge did not have fiduciary relationship with tenant who was before judge in eviction proceeding, as required to support tenant's breach of fiduciary duty **claim** against judge.

Cases that cite this headnote

[18]   **Action**
👉What law governs
**Civil Rights**
👉What law governs

New York law's choice of law analysis would apply to supplemental state law **claims** the law of jurisdiction with most significant interest in, or relationship to, **claims** arising from state law disputes, in action arising from alleged conspiracy to discriminate against and harass **plaintiff** on basis of race, national origin, Christian values, and Republican party affiliation.

Cases that cite this headnote

[19]   **Labor and Employment**
👉Wrongful discharge in general

Under New York law, cause of action for tort of wrongful discharge did not exist.

Cases that cite this headnote

[20]   **Federal Courts**
👉Particular **Claims** or Causes of Action

**District court** would not exercise supplemental jurisdiction over former employee's state law wrongful discharge **claims** against former employer; wrongful discharge **claims** against former employer could be severed from remaining **claims** allegedly arising from conspiracy to discriminate against and harass **plaintiff** based on race, national origin, Christian values, and Republican party affiliation. 28 U.S.C.A. § 1367(c)(3).

1 Cases that cite this headnote

[21]   **Federal Civil Procedure**
👉Effect
**Federal Courts**
👉Labor and Employment

Former employee's wrongful termination **claim** against former employer would be **dismissed with prejudice to** extent former employee should seek to refile it in venue other than the district in which the employment relationship and termination occurred; alleged civil rights conspiracy **claims**, which relied in part upon wrongful termination **claim**, were dismissed and could not provide basis for retention of jurisdiction for improperly venued **claim**. 28 U.S.C.A. § 1391(b).

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

Cases that cite this headnote

[22]     **Federal Courts**
         Torts

Although New York and Pennsylvania each imposed strict pleading requirements on claims sounding in defamation, defamation action, under New York and Pennsylvania law, brought in federal court would be governed by federal procedural rule governing pleading, requiring a short and plain statement of claim. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.; N.Y. McKinney's CPLR Rule 3016(a).

Cases that cite this headnote

[23]     **Libel and Slander**
         Form and requisites in general

Allegations in defamation complaint, asserting claims under New York and Pennsylvania law arising from allegedly false credit reporting information, failed to disclose sufficient information to permit defendants to understand basis of plaintiff's complaints, and thus claims were required to be dismissed under procedural rule governing notice pleading. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

Cases that cite this headnote

[24]     **Federal Courts**
         Tort claims
         **Federal Courts**
         Effect of dismissal or other elimination of federal claims

Supplemental jurisdiction would not be exercised on Massachusetts law conversion claim against automobile loan creditor, following creditor's alleged taking of vehicle from purchaser; no federal claims remained in the action, diversity jurisdiction did not exist,

and state law conversion claim was severable from defamation and other state law claims which had been pleaded as part of civil rights conspiracy to discriminate against and harass plaintiff on basis of race, national origin, Christian values, and Republican party affiliation.

1 Cases that cite this headnote

[25]     **Antitrust and Trade Regulation**
         Particular cases
         **Products Liability**
         Tires and wheels
         **Products Liability**
         Negligence

Gross and reckless negligence claims and alleged lemon law violations did not comply with notice pleading requirements, in action against automobile manufacturer arising from automobile accident; plaintiff failed to allege where vehicle was purchased, which state's lemon law manufacturer had violated, which defendant was liable, or where automobile accident occurred, but rather, defendant attached a recall notice for braking system defect to complaint. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

Cases that cite this headnote

[26]     **Injunction**
         Particular cases

Issuance of filing injunction against litigant would be proper, to prevent harassment through abuse of the legal system; litigant received notice and opportunity to be heard and failed to oppose injunction, although litigant had opposed and filed unauthorized sur-reply to dismissal motions filed in underlying action.

1 Cases that cite this headnote

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

### Attorneys and Law Firms

Aror Ark O'Diah, pro se, Timespeed Information, Hicksville.

Rachel A. Seligman, Assistant Corporation Counsel, New York City Law Department, New York, for Defendant New York City.

Elliot D. Bernak, Jackson Lewis LLP, Woodbury, for Defendant Puro Water Group, Inc., sued herein as The Puro Water Group and U.S. Filter Inc.

Mary D. Tierney, Michael T. Clifford & Associates, PLLC, Riverhead, for Defendant the Honorable Richard A. Ehlers, sued herein as Richard Ehlers.

Benjamin J. Lee, Assistant Attorney General, New York, for Defendants New York State, New York State Department of Motor Vehicles, sued herein as New York State Department of Motor Vehicle, and New York State Workers' Compensation Board.

Nelly Stotland, Office of the Nassau County Attorney, Mineola, for Defendants Nassau County, Nassau County Attorney, and Nassau County District Attorney, sued herein as Nassau District Attorney.

Roy S. Dragotta, Tsunis, Gasparis & Dragotta, LLP, Hauppauge, Long Island, for Defendant Tsunis & Gasparis, LLP, sued herein as Tsunis and Gasperis.

Mark S. Mancher, Jackson Lewis LLP, Woodbury, for Defendant Sears Roebuck and Company.

Michael A. Miranda, Miranda & Sokoloff, LLP, Mineola, for Defendant Village of Flower Hill.

Nicholas J. Evashavik, Evashavik & Evashavik, Pittsburgh, PA, for Defendant Port Authority of Allegheny County, sued herein as PATransit Port Authority of Allegheny County in Pittsburgh.

Christine Marie Fecko, Ross & Hardies, New York, for Defendant Equifax Credit Information.

Sevan Ogulluk, Jones, Day, Reavis & Pogue, New York, for Defendant Experian.

Kevin T. Hughes, Lord, Bissell & Brook, New York, for Defendant IPC International Corp., sued herein as IPC International.

Bruce S. Luckman, Timothy P. Creech, Satzberg,

Trichon, Kogan & Wertheimer, P.C., Philadelphia, PA, for Defendant Trans Union.

Francine N. Silverstein, Duane Morris LLP, New York, for Defendants Allied Spectaguard, Mercy Hospital of Pittsburgh, sued herein as Mercy Hospital, and Mercy Providence Hospital, sued herein as Mercy Providence.

Michael C. O'Malley, Ohrenstein & Brown, LLP, Garden City, for Defendant Collectech Inc.

Carl A. Ronald, Tucker Arensburg PC, Pittsburgh, PA, for Defendant South Hills Ent.

Kenneth A. Elan, Esq., New York, for Defendant I.C. System, Inc., sued herein as I.C. Systems Inc.

Mark G. Ledwin, Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, for Defendant Ford Motor Credit Company, sued herein as Ford Motor Credit Corporation.

Michael J. Kiley, Office of the General Counsel, Michigan State University, East Lansing, MI, for Defendant Michigan State University.

Carl T. Grasso, Hertzfield & Rubin, P.C., New York, for Defendants Volkswagen Credit Inc. and Volkswagen of America Inc.

Kevin Barry McHugh, Jacobowitz, Garfinkel & Lesman, New York, for Defendant NCO Financial Systems.

David J. Breen, Assistant Corporation Counsel, City of Boston Law Department, Boston, MA, for Defendant City of Boston.

### OPINION AND ORDER

COTE, District J.

**\*1** **Plaintiff** *pro se* Aror Ark O'Diah ("O'Diah") filed this action on January 11, 2002, asserting **claims** against thirty-eight defendants, including statutory and constitutional **claims**, as well as **claims** for harassment, libel, and "moral and racial turpitude." O'Diah's principal **claim** appears to be that all of the defendants conspired to discriminate against and harass him based on his race and national origin, as well as his Christian values and Republican party affiliation. Specifically, O'Diah alleges that the defendants conspired to make false representations that the **plaintiff** owes child support and

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

other monies, which resulted in unfavorable credit reports, garnishment of the plaintiff's wages, repossession of his automobile, eviction, and other problems. O'Diah also makes more particular allegations concerning specific incidents of harassment by certain defendants. The principal incidents alleged include false credit reporting, police harassment, brutality and false arrest, and denial of access to courts and administrative bodies. The plaintiff's complaint references alleged wrongs against him committed in four states over the last six years.[1] The alleged co-conspirators are individuals, corporations, former employers, judges, the Second Circuit Court of Appeals, and state and local governmental bodies.

Twenty-three defendants have moved to dismiss the complaint for various reasons including failure to state a claim and *res judicata*.[2] For the various reasons that follow, the motions to dismiss are granted. O'Diah is given leave to replead certain claims.

## BACKGROUND

The plaintiff has previously filed lawsuits against some of the defendants in this action. In an action against the Port Authority of Allegheny County (the "Port Authority") in the Court of Common Pleas of Allegheny County, the plaintiff asserted claims based on the same events alleged in this action. In two separate actions in the United States District Court for the Eastern District of New York, he asserted claims against several defendants arising out of the same events alleged in this action.

### 1996 Allegheny County Suit Against Port Authority

O'Diah filed an action regarding a September 7, 1996 bus accident in Allegheny County against the Port Authority, in which he alleged the same facts and injuries he alleges in this action with respect to the same bus accident. In both suits he claims essentially that the Port Authority promised to pay his medical bills and then did not, and that such failure to pay injured his credit. The Allegheny County action was dismissed with prejudice for failure to comply with a Court Order on August 11, 1999. The Commonwealth Court of Pennsylvania affirmed the decision of the trial court by Order of March 2, 2000, and O'Diah's petition for appeal to the Pennsylvania Supreme Court was denied on August 22, 2000.

### Eastern District Actions

In an action filed in the Eastern District of New York on December 7, 1999 (No. 99 Civ. 8010) ("1999 Eastern District Action"), O'Diah asserted claims against the following defendants also named in this action: U.S. Filter, Inc. ("U.S.Filter"); Piping Rock Natural Water ("Piping Rock"); IPC International Corporation ("IPC"); the city of Boston; Michigan State University; the Port Authority; and Volkswagen of America Inc. ("Volkswagen"), based on the same incidents that underlie the claims in the instant action.

*2 O'Diah alleged that the Port Authority had failed to pay his medical expenses in connection with a bus accident as promised and that, as a result, reports of unpaid bills were made to credit reporting agencies. He alleged that Michigan State University denied him equal access to University transportation and made false reports to credit reporting agencies that he had defaulted on student loans. He alleged that his vehicle was vandalized in Boston, and that he was assaulted by a Boston police officer at a train station. O'Diah alleged that IPC had wrongfully terminated his employment, owed him unpaid wages, and made misrepresentations about him to his employers. He alleged that U.S. Filter had wrongfully terminated his employment and that his car was vandalized on corporate property. He alleged that a defect in his Volkswagen caused an accident, and that Volkswagen failed to replace the vehicle as promised. Finally, O'Diah alleged that Piping Rock "influenced" U.S. Filter to fire him. The claims asserted by O'Diah in the 1999 Eastern District Action included deprivation of constitutional rights, violation of the Civil Rights Act of 1964, violation of Sections 1983 and 1985 of Title 42, United States Code, breach of fiduciary duty, unpaid wages, gross negligence, and libel.

The claims against IPC, the City of Boston, Michigan State University, the Port Authority and Volkwagen, among others, were dismissed with prejudice to their refiling in the Eastern District on March 28, 2000.[3] Motions to dismiss by U.S. Filter and related entities, and by Piping Rock and individuals associated with these defendants were denied. On April 18, 2000, O'Diah filed a notice of appeal from the March 28 Order dismissing some of the defendants with prejudice in the Eastern District. The appeal was dismissed on September 26, 2000, when the Second Circuit determined that it lacked jurisdiction because the action had not yet been terminated as to all parties.

While the 1999 Eastern District Action was still pending with respect to defendants U.S. Filter, Piping Rock and related entities and individuals,[4] plaintiff filed a second

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

action in the Eastern District on October 31, 2000 (No. 00 Civ. 6519) ("2000 Eastern District Action"). That action asserted claims against the following defendants also named in this action: Puro Water Group ("Puro") d/b/a U.S. Filter and Culligan, Long Real Estate Limited Partnership d/b/a Northern Glen Apartment Homes ("Northern Glen"), The Hon. Richard Ehlers ("Judge Ehlers"), Tsunis & Gasparis LLP ("Tsunis"), Sears Logistic Service Inc.,[5] Allied Spectaguard ("Allied"), The Hon. Leonard Wexler ("Judge Wexler"), Volkswagen, the Port Authority, IPC, the City of Boston, Michigan State University, and Nassau County.

The claims against these defendants included claims asserted against them in the instant suit. O'Diah alleged that Puro influenced Northern Glen to file a false eviction claim, made misrepresentations about him to his employers, and that his car was vandalized while on Puro's property. He alleged that Northern Glen, Tsunis, and Judge Ehlers conspired to evict him although he owed no rent, and reported him to credit collection agencies. He alleged that he was assaulted at Sears Logistic Services by a co-worker and that his employment was terminated in retaliation for complaints he had made about discrimination. O'Diah alleged that he was coerced to quit his job with IPC, that IPC owed him unpaid wages, and that his car was vandalized while parked at the mall where he worked for IPC. He alleged that Judge Wexler conspired to harass him and to deny him equal protection of the laws and access to the courts, and obstructed justice by dismissing the 1999 Eastern District Action. He alleged that his Volkswagen automobile was involved in an accident because of a manufacturing defect which was concealed by the auto manufacturer. Finally, O'Diah alleged police brutality against the City of Boston based on the train station incident. The claims asserted by O'Diah included unconstitutional harassment, product liability, personal injury, lost wages, libel and housing discrimination.[6]

*3 While the 2000 Eastern District Action was pending, through an order entered in the 1999 Eastern District Action on May 17, 2001 ("May 17 Order"), the claims against U.S. Filter, Piping Rock, and related entities and individuals were dismissed with prejudice for failure to prosecute, based on the plaintiff's refusal to submit to a deposition, his failure to respond properly to defendants' discovery requests, and his failure to attend court-ordered conferences. The Clerk of Court was directed to close the case, and judgment was entered in the 1999 Eastern District Action with respect to all defendants on May 30, 2001.

Through an order issued in the 2000 Eastern District

Action on May 24, 2001 (the "May 24 Order"), the court dismissed the claims against a number of defendants, including the following defendants also named in this action: IPC, the City of Boston, Michigan State University, the Port Authority, and Volkswagen, with prejudice to their re-filing in the Eastern District, but without prejudice to their filing in the "proper jurisdiction." The May 24 Order also dismissed with prejudice the claims against Judges Ehlers and Wexler pursuant to the doctrine of absolute judicial immunity. Finding that O'Diah had not sustained his burden of pleading his claim that all of the remaining defendants conspired to violate his constitutional rights, the court granted O'Diah leave to file an amended complaint within thirty days, and instructed the plaintiff to show in that amended pleading that there was a valid reason for joinder of his claims within the meaning of Rule 20, Fed.R.Civ.P., and to show that an Eastern District court had jurisdiction over the defendants remaining in the action. O'Diah never filed an amended pleading.[7]

On June 15, 2001, O'Diah filed a notice of appeal with the Court of Appeals for the Second Circuit, seeking review of the March 28 and May 17 Orders as well as the judgment in the 1999 Eastern District Action. His appeal was dismissed on July 11, 2001, for failure to pay the filing fee.

DISCUSSION

A. Res Judicata

The plaintiff's claims against Puro, U.S. Filter, Sears, and all of plaintiff's claims against the Port Authority with the exception of one defamation claim relating to Michigan State University, must be dismissed on the ground of res judicata.[8] Under the federal doctrine of res judicata, a final judgment on the merits of a federal action bars the parties or their privies "from relitigating claims that were or could have been raised in [the] prior action against the same defendant." *LTec Elec. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 87 (2d Cir.1999) (per curiam). *See also Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir.), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L–Tec,* 198 F.3d at 88.

Under the Full Faith and Credit Act, "judicial proceedings of any court of any [ ] State ... shall have the same full faith and credit in every court within the United States ...

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Consequently, the proceedings brought in Allegheny County against the Port Authority are given the same preclusive effect that they would be given by the Pennsylvania courts. *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 87 (2d Cir.2000). Under Pennsylvania law, "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action." *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1429 (3d Cir.1994) (citation omitted). In Pennsylvania, "[a]pplication of the doctrine of *res judicata* requires the concurrence of four elements. They are (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; [and] (4) identity of the quality in the persons for or against whom the claim is made." *Id.* (citing *City of Pittsburgh v. Zoning Bd. of Adjustment,* 522 Pa. 44, 559 A.2d 896, 901 (Pa.1989)); *see also Yamulla Trucking & Excavating Co. v. Justofin,* 771 A.2d 782, 784 (Pa.Super.Ct.), *appeal denied,* 566 Pa. 686, 784 A.2d 119 (Pa.2001) (citations omitted). While there is "no bright-line test" for determining when the causes of action in two suits are identical under Pennsylvania law for *res judicata* purposes, the criteria relevant to making this determination include:

> *4 (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062, 1065 (3d Cir.1991) (citation omitted).

**Puro and U.S. Filter**

[1] O'Diah's claims against U.S. Filter, Piping Rock and related entities and individuals were dismissed with prejudice in the 1999 Eastern District Action for failure to prosecute. Prior to these dismissals, O'Diah's claims against all other defendants had been dismissed.

Judgment was entered with respect to all defendants in the 1999 Eastern District Action on May 30, 2001. A dismissal for failure to prosecute constitutes a final adjudication on the merits, *see* Rule 41(b), Fed.R.Civ.P., and requires the dismissal of O'Diah's claims against U.S. Filter on the ground of *res judicata.* The judgment in the 1999 Eastern District Action also requires the dismissal of O'Diah's claims against Puro, an affiliate of U.S. Filter, on the ground of *res judicata.*[9] The factual allegations in the three federal complaints indicate that O'Diah is targeting the same alleged conduct when he names either U.S. Filter or Puro.

**Sears**

[2] Sears Logistic Service Inc. ("Sears Logistic") was named as a defendant in the 2000 Eastern District Action. Although Sears is the named defendant in this action, the allegations in both complaints make it clear that O'Diah's claims address the same alleged conduct by the same entity. Sears Logistic filed an answer in the 2000 Eastern District Action on January 17, 2001, thus preventing O'Diah from voluntarily dismissing his claims against it pursuant to Rule 41(a), Fed.R.Civ.P. O'Diah's claims against Sears Logistic were later dismissed through the May 24 Order, and he did not replead those claims within thirty days as the order permitted.[10] In the May 24 Order, the court warned O'Diah that his "failure to comply" with the order "may result in dismissal of [the] action pursuant to Rule 41(b)," Fed.R.Civ.P. As previously noted, final judgment was not entered on the docket in the 2000 Eastern District Action.

A judgment must be final in order to have preclusive effect, and finality for purposes of *res judicata* is generally the same as that required for appealability under the final judgment rule. *See Pure Distrib., Inc. v. Baker,* 285 F.3d 150, 156–57 (1st Cir.2002) (collecting cases); *Burge v. Parish of St. Tammany,* 187 F.3d 452, 467 (5th Cir.1999); *Shamley v. ITT Corp.,* 869 F.2d 167, 170 (2d Cir.1989); *First Alabama Bank of Montgomery v. Parsons Steel, Inc.,* 825 F.2d 1475, 1480 & n. 5 (11th Cir.1987); *Acha v. Beame,* 570 F.2d 57, 63 (2d Cir.1978). This general practice, however, does not mandate the elevation of form over substance. As the Second Circuit has noted in the context of collateral estoppel, "final ... is a word of many meanings." *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir.1961) (citation omitted). When determining whether a judgment should be considered final with respect to a claim, the Restatement (Second) of the Law of Judgments notes that "a judgment will ordinarily be considered final in respect to a claim ... if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

of the claim by the court, short of any steps by way of execution or enforcement. *See also Lummus,* 297 F.2d at 89 (Finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."); *U.S. v. McGann,* 951 F.Supp. 372, 380 (E.D.N.Y.1997) (citing *Lummus* and holding that a grant of partial summary judgment was sufficiently final to have *res judicata* effect).

*5 Following the May 24 Order in the 2000 Eastern District Action, O'Diah could have amended his complaint in accordance with the court's order, or could have requested the entry of final judgment by the district court so that he could appeal the order. O'Diah followed neither course. He was warned that failure to comply with the court's directive could result in dismissal pursuant to Rule 41(b), Fed.R.Civ.P., and the filing of an answer by Sears prevented O'Diah from exercising any right to dismiss his claims voluntarily pursuant to Rule 41(a), Fed.R.Civ.P. The district court's failure to enter an order dismissing all claims with prejudice after the thirty days for repleading had passed and to enter final judgment in the action should not prevent the prior dismissal of O'Diah's claims against Sears from having *res judicata* effect. Any other conclusion would be wasteful of judicial resources, impose an unfair burden on defendants, and encourage plaintiffs to ignore court orders and file multiple suits to litigate the same injuries. The fundamental principle underlying the doctrine's application is the simple idea that a litigant should have one full and fair opportunity to litigate his claims. It cannot be said that O'Diah has not had his opportunity. Accordingly, O'Diah's claims against Sears are dismissed with prejudice pursuant to the doctrine of *res judicata.*

*Port Authority*

[3] In the Allegheny County action, O'Diah asserted two claims against the Port Authority arising from the same bus accident alleged in this action, and the Port Authority's subsequent failure to pay O'Diah's medical bills as allegedly promised: "gross negligence in bad faith," and "bad faith breach of statutory responsibility in violation of fiduciary duty to pay medical bill." Of the four elements required by Pennsylvania courts for the application of the doctrine of *res judicata,* the only one which is not clearly established is the identity of the cause(s) of action, a defect which is largely attributable to the deficiencies in the drafting of the pleadings. It is evident that the wrong for which redress is sought, the material facts and necessary evidence, and the theory of recovery are identical. Consequently, with the exception of one defamation claim relating to Michigan State

University that will be addressed below, the claims against the Port Authority are barred by *res judicata.*

B. *Immunity*

*New York State Defendants*

[4] All of O'Diah's claims against New York State and the New York State Department of Motor Vehicles ("DMV"), and all but one of his claims against the New York State Workers' Compensation Board (the "Workers' Compensation Board"), are barred by the Eleventh Amendment. O'Diah alleges that New York State violated 42 U.S.C. § 1983 ("Section 1983") by engaging in a conspiracy to have the plaintiff fired from his jobs at Sears and Allied, to influence Nassau County and the New York City police department to harass the plaintiff, to encourage a co-worker at Sears to assault the plaintiff, and to garnish plaintiff's wages from Sears. O'Diah further alleges that New York State violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), by providing false information and making false credit reports regarding unpaid child support to Northern Glen, Ford Motor Credit Corp. ("Ford"), Sears, IPC, U.S. Filter, Puro, Allied, Volkswagen and "several financial houses." O'Diah has also alleged that New York State made false statements about him to Puro, Northern Glen, Ford, IPC, Allied, and Sears.

*6 O'Diah alleges that the Workers' Compensation Board violated Section 1983 and the Civil Rights Act of 1964 by engaging in a conspiracy to encourage plaintiff's co-worker at Sears to attack him and to delay adjudication of plaintiff's workers' compensation claims, one of which appears to concern the alleged assault by the co-worker. O'Diah also alleges that the Workers' Compensation Board violated Section 1983 by denying him equal access to its forum and violated the FCRA by making misrepresentations to the public concerning plaintiff's debts.

O'Diah alleges that the DMV violated Section 1983 by engaging in a conspiracy with Nassau County and the New York City police department to harass plaintiff by issuing traffic tickets and taking his driver's license. O'Diah also alleges that the DMV has violated the FCRA by making misrepresentations to the public concerning the plaintiff's debts. In an attempt to tie the disparate incidents and events alleged in the complaint together for the purposes of this action, O'Diah also asserts a conspiracy claim against all defendants, including the New York State defendants, under 42 U.S.C. § 1985 ("Section 1985").

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

The Supreme Court has interpreted the Eleventh Amendment to mean that States, as sovereigns, are immune from suit in federal court absent consent or valid abrogation of that immunity by Congress. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000) (citing *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). The immunity extends to state agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

Both the DMV and the Workers' Compensation Board are state entities for purposes of Eleventh Amendment immunity. *See Smith v. Schwartz,* No. 98 Civ. 2838(RJD), 1999 WL 294733, at *1 (E.D.N.Y. Mar.22, 1999) (Workers' Compensation Board); *CBF Trustee v. Hymans,* No. 96 Civ. 9557(JFK), 1998 WL 91123, at *4 (S.D.N.Y. Mar.2, 1998) (DMV); *Estes–El v. State Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau,* No. 95 Civ. 3454(JFK), 1997 WL 342481, at *3 (S.D.N.Y. June 23, 1997) (DMV); *Smith v. Workers' Compensation Bd. of State of N.Y.,* No. 89 Civ. 2748(ADS), 1990 WL 47778, at *2–3 (E.D.N.Y. Apr.3, 1990), *aff'd,* 923 F.2d 844 (2d Cir.1990) (Workers' Compensation Board).[11]

[5]  [6]  Since neither New York nor its agencies have consented to this suit in federal court, the defendants are subject to suit in federal court only if Congress effectively abrogated the States' sovereign immunity. The federal statutes implicated by O'Diah's allegations against these defendants include Section 1983, Section 1985, the FCRA, and the Civil Rights Act of 1964. Section 1983 does not abrogate a state's Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). O'Diah's Section 1985 conspiracy claims against the New York State defendants must be dismissed because "[i]t is well settled that a state and its agencies are not 'persons' under ... Section 1985." *Santiago v. State Dep't of Corr.,* 725 F.Supp. 780, 783 (S.D.N.Y.), *rev'd on other grounds,* 945 F.2d 25 (2d Cir.1991); *see also Chadha v. Connecticut Med. Exam'rs Bd.,* No. 99 Civ. 874(EBB), 1999 WL 1067805, at *3 (D.Conn. Oct.29, 1999). Because Congress enacted the FCRA pursuant to its authority under the Commerce Clause, Congress is not empowered to abrogate a state's Eleventh Amendment immunity through the FCRA. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also Hale v. Mann,* 219 F.3d 61, 67 (2d Cir.2000) ("After *Seminole Tribe* the only

potential source for congressional abrogation is the Fourteenth Amendment."). Congress did, however, abrogate Eleventh Amendment immunity when enacting the Civil Rights Act of 1964. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 448, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

*7 Accordingly, all of O'Diah's claims against New York State and the DMV must be dismissed with prejudice to refiling them in federal court. With the exception of O'Diah's claim against the Workers' Compensation Board for violations of the Civil Rights Act of 1964, the plaintiff's claims against this defendant are also dismissed with prejudice to refiling them in federal court. O'Diah's allegations of a Civil Rights Act violation will be discussed in greater detail below.

*Judge Ehlers and Village of Flower Hill*
[7] O'Diah has alleged that Judge Ehlers and Judge Byrne, "a State Court Judge at the Village of Flower Hill," violated his constitutional and civil rights based on his national origin and race in violation of the Civil Rights Act of 1964. The plaintiff has also alleged that Judge Ehlers conspired with Northern Glen to remove O'Diah from his apartment based on false charges of failure to pay rent and child support, and because O'Diah is a supporter of the Republican party's moral values and Christian principles. Judge Ehlers conducted a hearing in a landlordtenant dispute between the plaintiff and the owners of Northern Glen, and rendered an adverse decision against the plaintiff on July 5, 2000. To the extent O'Diah has named the Village of Flower Hill as a defendant in this action in order to address judicial conduct by Judge Byrne, his claims against this defendant are dismissed with prejudice. O'Diah's claims against Judge Ehlers also must be dismissed with prejudice.

A judge is absolutely immune from civil liability for his judicial acts. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *see also Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997). "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles,* 502 U.S. at 10 (citation omitted). This judicial immunity is an immunity from suit, and is not limited to immunity from an ultimate assessment of damages. *Id.* at 11. In addition, judicial immunity is not overcome by allegations of bad faith or malice, nor by a judicial action taken in error or in excess of authority. *Id.* To the extent that O'Diah is

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

seeking to assert his conspiracy claim and/or a Section 1983 claim against the Village of Flower Hill for actions not related to judicial conduct, those claims are addressed below.

### C. Jurisdiction

[8] O'Diah contends that there is both diversity and federal question jurisdiction over his claims. O'Diah alleges that he is a resident of the State of New York. At least seven of the defendants named in this action are also resident in New York State. Consequently, there is no diversity jurisdiction over his claims. *See Moser v. Pollin,* 294 F.3d 335, 340 (2d Cir.2002) (complete diversity required for diversity jurisdiction).

*8 In his opposition to the motions to dismiss filed by several defendants, O'Diah claims that he maintains "residents [sic] concurrently in the States of New York, Pennsylvania, and Massachusetts." Even if O'Diah could establish that he is a domiciliary of Pennsylvania or Massachusetts instead of New York, that would not create diversity since he has also named residents of both of those jurisdictions as defendants in this lawsuit. Accordingly, the only basis for subject matter jurisdiction is the federal causes of action alleged in the plaintiff's complaint.

### D. Federal Question Claims

O'Diah asserts claims under Section 1983, Section 1985, the FCRA, and the Civil Rights Act of 1964. Because O'Diah's complaint fails to state a claim under any of these statutes, his federal claims must be dismissed.

A court may dismiss an action pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (citation omitted). In considering the motion, the court must "accept as true all allegations in the complaint," *Hayden v. County of Nassau,* 180 F.3d 42, 47 (2d Cir.1999), and "draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat'l Life Ins. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994). The court can dismiss the claim only if, assuming all facts alleged to be true, the plaintiff still fails to plead the basic elements of a cause of action. Where a party is proceeding *pro se,* the court must "construe [the] pleadings broadly, and interpret them to raise the strongest arguments they suggest." *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (citation omitted); *see also Cucco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

### 1. Section 1983 claims

#### a. Non–Government Defendants

A number of the defendants in this action are private entities rather than governmental bodies or officers. In order to state a claim under Section 1983, a plaintiff must allege that he was injured by "either a state actor or a private party acting under color of state law," *Ciambriello v. County of Nassau,* 292 F.3d 307, 323 (2d Cir.2002), and that such conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States, *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

[9] O'Diah appears to allege that the private defendants acted under color of state law by conspiring with the governmental defendants. O'Diah's conclusory allegations are insufficient to state a Section 1983 claim against any of the private defendants. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello,* 292 F.3d at 324 (citation omitted). As the Second Circuit recently observed, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim." *Id.* (citation omitted). The plaintiff's allegations provide no details of time and place, and fail to describe "the factual basis necessary to enable defendants intelligently to prepare their defense." *Id.* at 325 (citation omitted); *see also Dwares,* 985 F.2d at 100 (details of time and place). Leave to replead plaintiff's Section 1983 conspiracy claims will not be granted for the reasons discussed below in connection with plaintiff's Section 1985 conspiracy claims.

#### b. Government Defendants: Nassau County Defendants, New York City, City of Boston, and Village of Flower Hill

*9 O'Diah alleges that on October 25, 2000, the Nassau County Police arrested him without cause, undressed him, cuffed and chained him to a stationary metal pole where he remained for more than eleven hours, and placed him in jail for 21 hours without cause. The plaintiff was allegedly told that his detention related to his failure to pay child support and his requests to contact a lawyer were denied. O'Diah also alleges that Nassau County and the Nassau County Police have joined with the New York City Police in an effort to harass him, in part through the issuance of meritless traffic tickets. O'Diah alleges that the DMV has been involved in a joint effort with Nassau County to harass him and take away his driver's license.

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

O'Diah also alleges that the Nassau County Attorney and District Attorney have withheld the names and contact information of the families of five robbers who took $25 from the plaintiff in Garden City on January 11, 2001. O'Diah alleges that he was assaulted by a Boston police officer at the Boston train station, while waiting for a train to New York. He alleges that he was pulled to the station floor, thrown against the station's double glass doors, and thrown against a stationary construction truck outside of the station. O'Diah alleges that Judge Bryne, a judge in the Village of Flower Hill, violated his constitutional rights in an unspecified way.

Liberally construing the complaint, O'Diah appears to assert a Section 1983 claim against Nassau County for police harassment, false arrest and imprisonment, against New York City for police harassment, and against the City of Boston for police brutality. Section 1983 does not create any substantive rights. It is, instead, the procedural mechanism for bringing an action based on an underlying violation of a federal right. *Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.,* 163 F.3d 749, 756 (2d Cir.1998). It is unnecessary to resolve, however, whether the complaint sufficiently identifies in each instance a federal right that has been violated since the plaintiff's claims against each of these defendants suffer from other infirmities.

In a suit brought under Section 1983, municipalities cannot be held liable unless the plaintiff can prove that the unconstitutional action was taken pursuant to

> a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] ... [or] pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), cert. denied, 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (brackets in original); *see Pinaud v. County of Suffolk,* 52 F.3d 1139, 1157 (2d Cir.1995) ("an actionable claim under § 1983 against a county or municipality depends on a harm stemming from a municipality's policy or custom"). In order to state a Section 1983 claim against these defendants, then, the plaintiff must allege that the city's or county's "policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy" caused the injury. *Monell,* 436 U.S. at 694; *see Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Rookard v. Health & Hosps. Corp.,* 710 F.2d 41, 45 (2d Cir.1983) (municipal corporation).[12]

*10 [10] The plaintiff has not pled a *Monell* claim against any of these defendants. The complaint makes no mention of any practice or custom espoused by New York City, the City of Boston, the Village of Flower Hill, or Nassau County, nor does the complaint allege facts tending to support an inference that such a policy or custom exists.

In the case of the City of Boston, the plaintiff has alleged one incident of police brutality. In the case of Nassau County, the plaintiff has alleged one incident of false arrest and imprisonment. O'Diah has made no specific allegations against the Village of Flower Hill. While O'Diah has alleged harassment through the issuance of traffic tickets against Nassau County and New York City, these allegations of ongoing harassment do not state a *Monell* claim because they are unsupported by any factual allegations. While the plaintiff enjoys all favorable inferences from facts that have been pleaded for purposes of a motion to dismiss, this does not permit "conclusory statements to substitute for minimally sufficient factual allegations." *Elec. Communications Corp. v. Toshiba Am. Consumer Prods., Inc.,* 129 F.3d 240, 243 (2d Cir.1997). A *pro se* plaintiff's "conclusory allegation ... without evidentiary support or allegations of particularized incidents, does not state a valid claim." *Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990); *see also Ciambriello,* 292 F.3d at 324 (Section 1983); *Barrett v. Harwood,* 189 F.3d 297, 303 (2d Cir.1999), cert. denied, 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000) (same); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (same).

The plaintiff's Section 1983 claims against these Government defendants are dismissed with prejudice. O'Diah has not asked for leave to replead his Section 1983 claims against the Government defendants, and the motions to dismiss filed by these defendants set out in detail the pleading inadequacies in any *Monell* claim the plaintiff seeks to assert. O'Diah did not respond to these inadequacies in his opposition and unauthorized sur-reply, both of which simply repeat the conclusory allegations in the complaint. As noted in *supra* note 12, O'Diah may file in the jurisdiction in which the alleged violation occurred a lawsuit against the individual government officers who were personally involved in any violation of plaintiff's rights under federal law.

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

[11] O'Diah has also alleged that the Nassau County District Attorney refused to provide him with contact information for the five robbers who attacked him in Garden City on January 11, 2001, information O'Diah sought in order to seek assistance from the robbers and their families in paying the medical bills he incurred as a result of the attack. The Nassau County District Attorney has moved to dismiss on the ground, *inter alia*, that O'Diah's allegation does not state any violation of law. In his opposition and sur-reply, O'Diah did not address this argument and does not identify a federal right that was violated by the District Attorney's alleged conduct.[13] Accordingly, O'Diah's claim against the Nassau County District Attorney for failure to provide contact information for the robbers is dismissed with prejudice.

2. *Section 1985 Conspiracy Claim Against All Defendants*
*11 Section 1985 of Title 42, United States Code, provides in relevant part that:

> If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws. *See United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Great Am. Fed. Sav. & Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). To assert a claim under Section 1985(3), a plaintiff must allege that the defendants have, with racial or other class-based discriminatory animus, conspired to deprive the plaintiff of a constitutional or other federal right. *See LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 426–27 (2d Cir.1995); *Spencer v. Casavilla,* 903 F.2d 171, 175 (2d Cir.1990). Allegations of conspiracy must be pled with particularity and will not withstand a motion to dismiss if they are conclusory and vague. *Ciambriello,* 292 F.3d at 325 (Section 1983 conspiracy claim).

[12] In an attempt to tie together the disparate incidents

alleged in the complaint, O'Diah has alleged that all of the defendants conspired to deprive him of his constitutional rights and property based upon his "Christian values, moral views, political affiliation with the Republican party, national origin" and race, principally through the dissemination of false credit information. O'Diah has also alleged a number of satellite conspiracies, involving participation by certain of the named defendants. For example, the plaintiff has alleged that New York State and Nassau County "influenced" Volkswagen and/or Volkswagen Credit Inc. ("Volkswagen Credit") to make a false credit report against him, and that the Workers' Compensation Board has conspired with his employers and an attorney at Braunstein & Chase ("Braunstein") to deny him equal access to its forum. O'Diah has also alleged that the defendants have engaged in a conspiracy having as its objects his murder and the kidnaping and brain-washing of his teenage daughter.[14]

O'Diah has not alleged facts to demonstrate an agreement between any of the named defendants. Indeed, O'Diah has not alleged facts supporting any connection between the defendants. The complaint is devoid of any allegations regarding with whom each defendant conspired, when or where any agreement was made, or the precise nature of such an agreement. In sum, the allegations in the complaint are not sufficient to state a claim under Section 1985 against all of the defendants jointly, or against groups of defendants. Accordingly, O'Diah's Section 1985 claim based on a conspiracy to commit the crimes above is dismissed with prejudice.

*12 [13] O'Diah has not asked for leave to replead his claims. In any event, leave to replead would not be appropriate. The motions to dismiss set out in detail the pleading inadequacies in the complaint, particularly with respect to the plaintiff's conspiracy claim. O'Diah submitted an opposition and an unauthorized sur-reply in response to these motions to dismiss, both of which simply repeat the conclusory allegations in the complaint. Moreover, O'Diah was already given a chance to replead his conspiracy claim against a number of the defendants named herein through the May 24 Order in the 2000 Eastern District Action. He declined to do so. While leave to replead is liberally granted to *pro se* litigants, leave need not be granted here in light of the likely futility of such a grant, as well as the several opportunities already given to the plaintiff to articulate the factual bases for his conspiracy claims.

3. *FCRA Claim Against All Defendants*
[14] O'Diah alleges that the defendants, both jointly and

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

individually, motivated by "racial stereotyping," violated the FCRA by reporting false credit information to other defendants, and by representing the plaintiff as a "bad debtor" to the general public. Specifically, O'Diah alleges that a number of these misrepresentations involved child support obligations and failure to pay medical bills. O'Diah alleges that he discovered these false credit reports on September 4, 2001.

The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. See 15 U.S.C. § 1681, et seq.; Aklagi v. Nationscredit Fin. Servs. Corp., 196 F.Supp.2d 1186, 1192 (D.Kan.2002); Thomasson v. Bank One, Louisiana, N.A., 137 F.Supp.2d 721, 722 (E.D.La.2001). The defendants who have moved to dismiss the complaint are furnishers of credit information for purposes of the FCRA.

The FCRA imposes two duties on furnishers of information, codified at 15 U.S.C. §§ 1681s–2(a) and (b). The category of duties in subsection (a) relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information. Section 1681s–2(a) provides in relevant part as follows:

> A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate....

> A person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer ... that specific information is inaccurate; and (ii) the information is, in fact, inaccurate....

> A person who ... has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

*13 15 U.S.C. §§ 1681s–2(a)(1) and (2).

The category of duties in subsection (b) governs the furnishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency. Subsection (b) states as follows:

> After receiving notice [from a credit reporting agency] pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

> (A) conduct an investigation with respect to the disputed information;

> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

> (C) report the results of the investigation to the consumer reporting agency; and

> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s–2(b)(1).

There is no private cause of action under Section 1681s–2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials. 15 U.S.C. § 1681s–2(d); see also Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir.2002); Aklagi, 196 F.Supp.2d at 1192; Hasvold v. First USA Bank, N.A., 194 F.Supp.2d 1228, 1234 (D.Wyo.2002); Scott v. Amex/Centurion S & T, Nos. 3:01 Civ. 1594–H—3:01 Civ. 1602–H, 2001 WL 1645362, at *4 (N.D.Tex. Dec.18, 2001); Fino v. Key Bank of New York, No. 00 Civ. 375E, 2001 WL 849700, at *4 (W.D.Pa. July 27, 2001); Yelder v. Credit Bureau of Montgomery, L.L.C., 131 F.Supp.2d 1275, 1283 (M.D.Ala.2001); Quigley v. Pennsylvania Higher Educ. Assistance Agency, No. 00 Civ. 1661, 2000 WL 1721069, at *2 (N.D.Cal. Nov. 8, 2000); Olexy v. Interstate Assurance Co., 113 F.Supp.2d 1045, 1047 (S.D.Miss.2000).

Although there has been some disagreement, the majority of courts to have considered the issue have concluded that consumers may pursue claims for willful or negligent noncompliance with Section 1681s–2(b). See, e.g., Nelson, 282 F.3d at 1060; Aklagi, 196 F.Supp.2d at 1193; Hasvold, 194 F.Supp.2d at 1236; Scott, 2001 WL 1645362, at *4; Fino, 2001 WL 849700, at *5; Wexler v. Banc of America Auto Fin. Corp., No. 00 Civ. 865, 2001 WL 428155, at *2 (N.D.Ill. Apr. 26, 2001); Thomasson, 137 F.Supp.2d at 723 (collecting cases); Whitesides v. Equifax Credit Info. Servs., Inc., 125 F.Supp.2d 807, 812

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

(W.D.La.2000); *McMillan v. Experian Info. Servs., Inc.,* 119 F.Supp.2d 84, 88 (D.Conn.2000); *Olexy,* 113 F.Supp.2d at 1047–48; *but see Carney v. Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 502 (W.D.Tenn.1999). Those courts that have concluded that a private right of action exists under Section 1681s–2(b) have required a plaintiff to show that the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information is disputed. *See, e.g., Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 639–40 (5th Cir.2002).[15] Since the complaint claims a violation of subsection (a) only, it is unnecessary to determine whether a private right of action exists under subsection (b).

*14 O'Diah has alleged that the defendants, jointly and individually, have falsified credit reports against him, and recklessly disregarded his concerns when he contacted them to correct their reports.[16] Because there is no private right of action under subsection (a), O'Diah's claims pursuant to the FCRA must be dismissed. Dismissal is with prejudice. The plaintiff has not asked for leave to replead; the motion papers of several of the defendants explained the deficiencies in the plaintiff's pleading with respect to his claims under the FCRA; and neither the plaintiff's opposition nor his sur-reply attempted any answer to these deficiencies.

4. *Federal Civil Rights Act of 1964*

The only specific mention of the Civil Rights Act of 1964 in the complaint is O'Diah's allegation that Judges Ehlers and Wexler, the Village of Flower Hill, the Workers' Compensation Board, and the attorneys at Tsunis and at Braunstein engaged in a "joint systematic violation" of plaintiff's "rights protected by the Federal Civil Rights Act of 1964, based upon the identification of the plaintiff [sic] national origin, motivated by racial stereotyping in disregard." O'Diah appears to allege that the violation committed by these defendants involved a denial of due process and equal protection of the laws. In the complete absence of any factual allegations it is impossible to evaluate whether the plaintiff may be able to state a claim pursuant to the Civil Rights Act of 1964 against these defendants.

[15] In its motion to dismiss, Tsunis explains that O'Diah's complaint fails to state a claim for a Civil Rights Act violation because it fails to allege any state action on the part of Tsunis that would sustain a due process or equal protection claim. In his opposition and sur-reply, O'Diah does not provide any facts in response to the pleading deficiency noted by Tsunis. Because O'Diah has not requested leave to replead his Civil Rights Act claim

against Tsunis and because he was given fair notice of the deficiencies in pleading this claim in Tsunis's motion to dismiss, O'Diah's Civil Rights Act claim against Tsunis is dismissed with prejudice.

O'Diah's Civil Rights Act claim against the Workers' Compensation Board is dismissed without prejudice to filing an amended pleading as described in a scheduling order issued in connection with this Opinion.[17] Should no amended pleading be filed in compliance with that order, this claim will be dismissed with prejudice.

E. *State Law Claims*

[16] [17] The state law claims asserted by O'Diah in this action appear to include claims of wrongful termination from employment, breach of fiduciary duty,[18] libel, defamation, slander, gross and reckless negligence, and violations of some state's lemon law.[19] This Court's exercise of jurisdiction over O'Diah's state law claims is an exercise of supplemental jurisdiction. For the reasons that follow, each of these claims must be dismissed.

*Choice of Law*

*15 [18] A federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state. *See N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43 (2d Cir.1999); *see also Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599, 607 (2d Cir.), *cert. denied,* 534 U.S. 1042, 122 S.Ct. 618, 151 L.Ed.2d 540 (2001) (federal choice of law analysis to be applied only where a significant federal policy is implicated). Using a flexible "interest analysis" approach, New York courts apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute. *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 301 (2d Cir.2000). Under this formulation, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* With the exception of O'Diah's claims of libel, slander, and defamation against Mercy Hospital of Pittsburgh ("Mercy Pittsburgh") and Mercy Providence Hospital ("Mercy Providence"), his claim of wrongful termination against IPC, and his claims of negligence and lemon law violations against Volkswagen, all of his state law claims arise out of events that took place in New York.

*Wrongful Termination—New York Law*

[19] Liberally construing O'Diah's complaint, he may be alleging that he was unlawfully fired from his employment with defendant Allied.[20] This claim must be

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

dismissed because New York does not recognize the tort of wrongful discharge. *Lobosco v. New York Tel. Co.,* 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001); *DePetris v. Union Settlement Ass'n, Inc.,* 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 (1995); *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *see also Rooney v. Tyson,* 127 F.3d 295, 296–97 (2d Cir.1997). Absent an arrangement establishing a fixed duration, an employment relationship is "presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason." *Lobosco,* 96 N.Y.2d at 316, 727 N.Y.S.2d 383, 751 N.E.2d 462. An at-will employee may only maintain an action to recover damages for wrongful discharge if he can establish detrimental reliance on an express written limitation upon the employer's otherwise unfettered right to terminate his employment at any time. *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333–36, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987); *see also Murphy,* 58 N.Y.2d at 300–01, 461 N.Y.S.2d 232, 448 N.E.2d 86. There is no indication in the complaint that O'Diah's employment with Allied was for a fixed duration. Nor has O'Diah alleged facts indicating that he relied upon any express written limitation on the right of Allied to terminate his employment at any time.[21]

[20] Allied has asked that this Court decline to exercise supplemental jurisdiction over any state law claims asserted against it. O'Diah has not opposed the application. O'Diah's federal conspiracy and FCRA claims against Allied have been dismissed with prejudice, and O'Diah's federal claims are the only basis for this Court's exercise of subject matter jurisdiction. Where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. 28 U.S.C. § 1367(c)(3); *Rocco v. New York State Teamsters Conference Pension & Retirement Fund,* 281 F.3d 62, 72 (2d Cir.2002), *petition for cert. filed* May 14, 2002 (No. 01–10222); *see also Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("where the federal claims are dismissed before trial, the state claims should be dismissed as well"). Because any state law claim for wrongful discharge asserted against Allied is entirely severable from the claims remaining in this action, this Court declines to exercise supplemental jurisdiction over it and the claim is dismissed without prejudice to being refiled in a separate action.

*Wrongful Termination—Massachusetts*
**\*16** O'Diah was employed by IPC in Massachusetts. IPC has moved to dismiss O'Diah's wrongful termination

claim against it for improper venue pursuant to Rule 12(b)(3), Fed.R.Civ.P.

On a motion to dismiss for improper venue, the plaintiff has the burden of establishing that he has chosen the proper venue. *TBV Holdings Ltd. v. Schey,* No. 02 Civ. 1122(BSJ), 2002 WL 1733649, at *1 (S.D.N.Y. July 26, 2002); *Cent. Nat'l–Gottesman, Inc. v. M.V. "Gertrude Oldendorff,"* 204 F.Supp.2d 675, 677 (S.D.N.Y.2002). Because all defendants in this action do not reside in the same state, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). While some of O'Diah's claims are asserted against defendants located in this judicial district or arise out of events that may have taken place in this judicial district, "[i]n a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted." *Solow Bldg. Co., LLC v. ATC Assoc. Inc.,* 175 F.Supp.2d 465, 469 (E.D.N.Y.2001) (citation omitted); *see also U.S. Envtl. Prot. Agency v. Port Auth. of N.Y. & N.J.,* 162 F.Supp.2d 173, 183 (S.D.N.Y.), *aff'd,* 23 Fed. Appx. 81 (2d Cir.2001), *cert. denied,* 535 U.S. 1079, 122 S.Ct. 1963, 152 L.Ed.2d 1023 (2002). Dismissal of an improperly venued claim is not warranted, however, "if it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief." *Solow,* 175 F.Supp.2d at 469 (citation omitted).

[21] While O'Diah has attempted to tie all of his various claims together with allegations of a conspiracy and of FCRA violations, O'Diah's conspiracy and FCRA claims have been dismissed with prejudice as to all defendants, and thus cannot provide a basis for retention of jurisdiction in this district. Aside from these two overarching claims, there are no allegations in the complaint to connect O'Diah's claim of wrongful termination against IPC to this district. Accordingly, O'Diah's wrongful termination claim against IPC is dismissed with prejudice to the extent plaintiff should seek to refile it in a venue other than Massachusetts.

*Defamation, Libel, and Slander Claims*
O'Diah has alleged that false credit information dispersed to the public by Mercy Pittsburgh, Mercy Providence, I.C. Systems, Inc. ("I.C.Systems"), and Nassau County constituted defamation, libel, and slander. O'Diah alleges that he discovered that the defendants had issued false credit reports about him on August 24, 2001.[22] The plaintiff was treated at Mercy Pittsburgh and Mercy Providence in Pennsylvania following the alleged Port Authority bus accident.[23] I.C. Systems is a debt collection company that was hired by defendant Jae Chil Kim

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

Rehab. to collect on a debt for services rendered in Pennsylvania. New York and Pennsylvania both have a one year statute of limitations for actions sounding in defamation. *See* 42 Pa.C.S.A. § 5523; N.Y. C.P.L.R. § 215(3).

**\*17** [22] O'Diah has not alleged in any detail the nature or substance of the statements of which he complains, nor has he alleged when, where, or in what manner they were made. New York and Pennsylvania each impose strict pleading requirements on claims sounding in defamation, including that the particular words complained of be set out at least in part, and that the approximate timing, manner, and publication of the statement be alleged. *See* N.Y. C.P.L.R. Rule 3016(a); *Demas v. Levitsky*, 291 A.D.2d 653, 738 N.Y.S.2d 402, 408 (3d Dep't 2002); *see also Lawrence v. City of Bethlehem*, No. 97 Civ. 1824, 1997 WL 793012, at \*4 (E.D.Pa. Dec. 4, 1997); *Lynch v. Borough of Ambler*, No. 94 Civ. 6401, 1995 WL 113290, at \*5 (E.D.Pa. Mar.15, 1995). A defamation action brought in federal court, however, is governed by Rule 8 of the Federal Rules of Civil Procedure, and not by particularized state pleading requirements. *See Odom v. Columbia Univ.*, 906 F.Supp. 188, 196 (S.D.N.Y.1995) (citing *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986)); *but see Luethke v. Seagram Co.*, No. 00 Civ. 7946(DC), 2000 WL 1880324, at \*3 (S.D.N.Y. Dec.28, 2000) (dismissing defamation claim for failure to comply with New York pleading requirements).

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Rule also requires that "[e]ach averment of a pleading shall be simple, concise, and direct ." Fed.R.Civ.P. 8(e)(1). "Under the Rules' liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." ' *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir.2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)).

[23] O'Diah's allegations fail to disclose sufficient information to permit these defendants to understand what the plaintiff is complaining about let alone to determine if he has any legal basis for recovery. Accordingly, O'Diah's claims of defamation, slander, and libel against these defendants must be dismissed for failure to comply with the pleading requirements of Rule 8.

The motion to dismiss by Nassau County may not have given the plaintiff sufficient notice that it was asserting a

pleading deficiency with regard to his claims of defamation, slander, and libel. These claims against Nassau County will be dismissed without prejudice to the filing of an amended pleading in compliance with the scheduling order to be issued by this Court. Failure to comply with that scheduling order will result in dismissal with prejudice.

The claims for defamation, libel and slander against I.C. Systems are dismissed with prejudice. This defendant's motion papers sufficiently identified the pleading deficiency. O'Diah's opposing papers did not cure the deficiency or request any opportunity to replead these claims.

**\*18** The defendants Mercy Pittsburgh and Mercy Providence (collectively the "Mercy Defendants") have asked that this Court decline to exercise supplemental jurisdiction over the defamation-related state law claims asserted against them. O'Diah has not opposed this application. O'Diah's federal conspiracy and FCRA claims against the Mercy Defendants have been dismissed with prejudice. As noted above, where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction over remaining state law claims. Because the state law claims sounding in defamation asserted against the Mercy Defendants are entirely severable from the claims remaining in this action, this Court declines to exercise supplemental jurisdiction over them and they are dismissed without prejudice to being refiled in a separate action.

In addition to claims concerning false credit reports, O'Diah has alleged other instances of certain defendants' conveying false information about him to other defendants, often with no detail as to when such exchanges occurred or of what such exchanges consisted. He alleges that Nassau County, Piping Rock,[24] the City of Boston, and New York State conveyed false information about him to several defendants, including that he had been "bad-mouthing" his employer's products, owed child support, and had spoken out against the Democratic Party. O'Diah further alleges that the Port Authority informed Michigan State University that O'Diah has an "irreparable illness" and that accommodating him in University housing would cause trouble.

To the extent these allegations also seek to assert claims sounding in defamation, they must also be dismissed for failure to comply with the pleading requirements of Rule 8. As noted above, O'Diah may replead any defamation and related claims against Nassau County, in compliance with this Court's scheduling order. Failure to comply with

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

that order will result in the dismissal with prejudice of any defamation and related claims against Nassau County. Because all of O'Diah's claims against New York State must be dismissed with prejudice on immunity grounds, O'Diah may not refile any defamation or related claims against New York State in any federal court.

The City of Boston has moved to dismiss any outstanding claims for improper venue. The plaintiff has not opposed this motion. For the reasons already discussed in connection with a similar motion made by IPC, this motion is granted. The claims against the City of Boston for defamation or conveying false information are dismissed with prejudice to refiling in any venue other than Massachusetts.

The plaintiff's defamation claim against the Port Authority regarding statements it allegedly made to Michigan State University is the only claim asserted against the Port Authority which may not be dismissed on the ground of *res judicata.* O'Diah may replead this single claim against the Port Authority in compliance with this Court's scheduling order. Failure to comply with that order will result in dismissal with prejudice.

*Conversion*

**\*19** O'Diah alleges that Ford "took" his car because the State of New York and Nassau County were threatening to sell the car for child support owed by the plaintiff. In connection with its motion to dismiss, Ford states that it repossessed the plaintiff's vehicle in Massachusetts on August 8, 2000, because the plaintiff defaulted in making payments on the vehicle.

Under Massachusetts law, the tort of conversion requires "an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." *Kelley v. LaForce,* 288 F.3d 1, 11 (1st Cir.2002) (citations omitted); *see also Cadle Co. v. Schlichtmann,* 267 F.3d 14, 21 (1st Cir.2001), *cert. denied,* 535 U.S. 1018, 122 S.Ct. 1607, 152 L.Ed.2d 622 (2002). An action for conversion requires "proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property." *Kelley,* 288 F.3d at 12 (citations omitted). A good faith, reasonable belief that one has a legal right to possession of goods is not a defense to a claim of conversion. *Id.* O'Diah has alleged simply that Ford "took" his car.

[24] It is not clear whether O'Diah seeks to assert a claim

for conversion against Ford, but this Court declines to exercise supplemental jurisdiction over any such claim. O'Diah's federal conspiracy and FCRA claims against Ford have been dismissed with prejudice. As noted above, where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. Any state law claim for conversion is entirely severable from the claims remaining in this action. Accordingly, at the request of Ford and without opposition from O'Diah, this Court declines to exercise supplemental jurisdiction over any such claim and it is dismissed without prejudice to being refiled in a separate action.

*Gross Negligence, Reckless Negligence, and Lemon Law Violation*

[25] O'Diah alleges that the defects in a Volkswagen Passat caused an accident which resulted in $10,000 in damages and physical injury to his son. The plaintiff alleges that after he discovered the defect in the vehicle, apparently prior to the accident, Volkswagen attempted to repair the vehicle on four occasions. O'Diah appears to assert claims against Volkswagen for "gross and reckless negligence" and violation of some state's lemon law. The complaint does not identify where the vehicle was purchased, where the accident occurred, which state's lemon law Volkswagen has violated or which Volkswagen defendant is liable.[25] A recall notice for a defect in the Passat's braking system sent to the plaintiff is attached to the complaint, and offers repair of the defect free of charge. These allegations are not sufficiently detailed to permit either Volkswagen defendant to understand the precise claim being asserted against it or to permit an inquiry into whether the allegations might make out a claim and how to defend such a claim. Accordingly, the claims brought by plaintiff for damages to the vehicle must be dismissed for failure to comply with the pleading requirements of Rule 8, Fed.R.Civ.P.

**\*20** In its motion to dismiss, Volkswagen explicitly described these deficiencies in pleading and further noted that necessary conditions precedent for bringing suit under the lemon law had not been fulfilled. These defects were not cured in O'Diah's opposition or sur-reply to the motion to dismiss, and O'Diah has not requested leave to replead. Accordingly, O'Diah's claim for damages to the vehicle resulting from the auto accident, asserted as a negligence and lemon law claim, is dismissed with prejudice.

Any claims for injuries to the plaintiff's son, who is apparently a minor, must also be dismissed. This

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

dismissal is without prejudice to filing in the jurisdiction in which the accident that injured the son occurred. The plaintiff is advised that many jurisdictions, including federal courts, require that any action brought on behalf of a minor be filed by an attorney. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,*—F.3d—, 297 F.3d 195, 2002 WL 1560062, at *5 (2d Cir. July 16, 2002) (citing *Cheung v. Youth Orchestra Fdn. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990); *Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123, 124–25 (2d Cir.1998) (per curiam) (citation omitted).

F. *Request for an Injunction*
[26] Defendants Puro, U.S. Filter, Tsunis, Sears, IPC, Allied, Volkswagen, and the City of Boston request an injunction preventing O'Diah from filing any actions or claims against them without the permission of the court in which any such action is filed. Such an injunction is only appropriate with respect to those defendants against whom the claims have been fully dismissed from this action with prejudice, namely, Puro, U.S. Filter, and Sears.

The Second Circuit has noted that

> district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel.

*Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir.2000) (per curiam), *cert. denied,* 534 U.S. 833, 122 S.Ct. 81, 151 L.Ed.2d 44 (2001) (citations omitted); *see also Malley v. New York City Bd. of Educ.,* 112 F.3d 69, 69 (2d Cir.1997); *In re Sassower,* 20 F.3d 42, 44 (2d Cir. Judicial Council 1994) ("the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints"). The issuance of a filing injunction is appropriate when a plaintiff "abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive ... proceedings." *Lau,* 229 F.3d at 123 (citation omitted). In determining whether or not to restrict a litigant's future access to the courts, a court should consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*21 *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986). The ultimate question to be answered by the court is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.* The " 'unequivocal rule' " in this Circuit, however, is that the district court may not impose a filing injunction on a litigant " 'without providing the litigant with notice and an opportunity to be heard.' " *Lau,* 229 F.3d at 123 (quoting *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) (per curiam)); *see also MLE Realty Assoc. v. Handler,* 192 F.3d 259, 261 (2d Cir.1999).

This action is at least the fourth lawsuit filed by the plaintiff.[26] Three of these actions have named more than twenty defendants, and have asserted claims of alleged wrongs committed over several years and in several different states. These lawsuits have repeated claims arising out of the same events through complaints that are extremely difficult to interpret and understand. Two of O'Diah's prior lawsuits have been dismissed for failure to prosecute or failure to comply with court orders. His claims against several defendants in this lawsuit had already been dismissed in the 2000 Eastern District Action on *res judicata* grounds or pursuant to the doctrine of judicial immunity. The plaintiff has not honed his claims nor his list of defendants as time has gone on, but has instead added defendants including some of the judges to whom his prior actions were assigned. *See Sassower,* 20 F.3d at 45 (referring to "technique of other vexatious litigants of launching new complaints against judicial officers for their actions in dismissing his prior complaints"). He has failed each time to articulate sufficient facts to link the conduct of the co-defendants.

After several defendants in this action filed motions to

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

dismiss, O'Diah moved for the issuance of a preliminary injunction to enjoin several entities, some of which are not named defendants in this action, from issuing false credit reports, and to bar pending proceedings at the DMV. An Order of May 21, 2002, indicated that briefing on the preliminary injunction motion would be scheduled should O'Diah's claims survive the pending motions to dismiss. Just over a week later, O'Diah filed an "Intermediate Intervention Request," referred to in his motion papers as a preliminary injunction request, asking the Court to enjoin several defendants from making misrepresentations in credit reports. An Order of June 5, 2002 repeated that a schedule for the plaintiff's request for injunctive relief would be addressed after consideration of the pending motions to dismiss.

In light of the above, an injunction is appropriate to prevent harassment through abuse of the legal system. O'Diah has received notice and an opportunity to be heard on the request made by several defendants for a filing injunction. In his opposition and sur-reply on those motions, the plaintiff did not oppose or even refer to the request for a filing injunction. An injunction shall be issued in connection with the filing of this Opinion.

CONCLUSION

**\*22** All claims pursuant to Section 1983, Section 1985, and the FCRA against all defendants who have filed motions to dismiss (see supra note 2) are dismissed with prejudice.

All claims against Puro Water Group, U.S. Filter, and Sears Roebuck and Company are dismissed with prejudice on the ground of res judicata. With the exception of plaintiff's defamation claim relating to Michigan State University, all claims against the Port Authority of Allegheny County are dismissed with prejudice on the ground of res judicata.

All remaining claims against the Village of Flower Hill and Judge Richard Ehlers are dismissed with prejudice on the ground of judicial immunity.

Any remaining claims against New York State and the New York State Department of Motor Vehicles are dismissed with prejudice to refiling in federal court. With the exception of plaintiff's Civil Rights Act claim, all remaining claims against the New York State Workers' Compensation Board are dismissed with prejudice to refiling in federal court.

The claim pursuant to the Civil Rights Act of 1964 against Tsunis & Gasparis is dismissed with prejudice.

The defamation-related claims against I.C. Systems are dismissed with prejudice. The negligence and lemon law claims against Volkswagen of America and Volkswagen Credit relating to damage incurred by plaintiff's vehicle as a result of a car accident are also dismissed with prejudice.

The claim for wrongful termination against IPC International and the defamation-related claims against the City of Boston are dismissed with prejudice to refiling in any venue other than Massachusetts. Any claim against Volkswagen of America and Volkswagen Credit for injuries sustained by plaintiff's son as a result of a car accident is dismissed, without prejudice to filing by or on behalf of the son in the jurisdiction in which the accident occurred.

The Court declines to exercise supplemental jurisdiction over the defamation claims against Mercy Hospital of Pittsburgh and Mercy Providence, as well as any wrongful termination claim against Allied Spectaguard and any conversion claim against Ford Motor Credit Corporation. These claims are dismissed without prejudice to refiling in the jurisdictions appropriate to each claim.

The defamation-related claims against Nassau County and against the Port Authority of Allegheny County regarding Michigan State University, and the claim against the New York State Workers' Compensation Board pursuant to the Civil Rights Act of 1964, are dismissed with leave to replead. The schedule for filing any amended pleading is set forth in a scheduling order also issued today. Failure to comply with the scheduling order shall result in dismissal with prejudice of the claims for which plaintiff has been given leave to replead.

A filing injunction barring any future suit against Puro Water Group, U.S. Filter, and Sears Roebuck and Company without leave of the court in which suit is filed for claims relating to the transactions or occurrences alleged against these defendants in the complaint filed in this action is issued today.

**\*23** SO ORDERED:

**All Citations**

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

Not Reported in F.Supp.2d, 2002 WL 1941179

Footnotes

1    The complaint is 29 pages long, not including the 44 pages of exhibits appended to the complaint, and consists of 24
     numbered paragraphs, some of which are greater than one full page in length.

2    Motions to dismiss have been filed by the following defendants: the City of Boston, Allied Spectaguard, Mercy
     Hospital of Pittsburgh (sued herein as Mercy Hospital), Mercy Providence Hospital (sued herein as Mercy Providence),
     New York State, the New York State Department of Motor Vehicles, the New York State Workers' Compensation
     Board, Volkswagen Credit, Inc., Volkswagen of America Inc., IPC International Corp. (sued herein as IPC
     International), New York City, Nassau County, the Nassau County Attorney, the Nassau County District Attorney (sued
     herein as the Nassau District Attorney), the Port Authority of Allegheny County (sued herein as PATransit Port
     Authority of Allegheny County in Pittsburgh), Puro Water Group, Inc., U.S. Filter Inc., Sears Roebuck and Company,
     the Honorable Judge Richard A. Ehlers (sued herein as Richard Ehlers), the Village of Flower Hill, I.C. System, Inc.
     (sued herein as I.C. Systems, Inc.), Ford Motor Credit Company (sued herein as Ford Motor Credit Corporation), and
     Tsunis & Gasparis, LLP (sued herein as Tsunis & Gasparis). Answers have been filed by the following defendants:
     Trans Union, the Village of Flower Hill, Nassau County, the Nassau County Attorney, the Nassau County District
     Attorney, Volkswagen Credit Inc., Volkswagen of America, Inc., Experian, NCO Financial Systems, and Equifax Credit
     Information. The plaintiff has filed affidavits of service with respect to all defendants except Northern Glen Apartment
     Homes, for which the plaintiff has filed an affidavit of "attempted" service, and Experian.

3    Although the March 28 Order states only that the claims against these defendants are dismissed with prejudice, the
     hearing preceding the Order indicated that the dismissal was with prejudice in the Eastern District of New York but
     without prejudice to refiling in the proper jurisdiction.

4    In the 1999 Eastern District complaint, O'Diah alleged that U.S. Filter "trades" as Culligan Bottled Water and Nature
     Best.

5    O'Diah has named Sears Roebuck and Company ("Sears") as a defendant in this action.

6    O'Diah also asserted employment discrimination in the 2000 Eastern District Action, but does not appear to do so in
     the instant suit.

7    No final judgment was entered on the docket in the 2000 Eastern District Action.

8    Although IPC, the City of Boston, and Volkswagen have moved to dismiss O'Diah's claims against them on the
     ground of res judicata because of the dismissals in the Eastern District, the dismissals of claims against those
     defendants were without prejudice to the filing of such claims in a venue other than the Eastern District. "It is well
     established that a dismissal without prejudice has no res judicata effect on a subsequent claim." Camarano v. Irvin, 98
     F.3d 44, 47 (2d Cir.1996) (per curiam).

9    In the 2000 Eastern District Action, O'Diah named Puro d/b/a U.S. Filter and Culligan as defendants.

10   Defendant Allied has also moved to dismiss the claims asserted against it in this action pursuant to the doctrine of
     res judicata . While O'Diah's claims against Allied were dismissed with leave to replead through the May 24 Order in
     the same way that his claims against Sears Logistic were, Allied had not filed an answer in the 2000 Eastern District
     Action. Because Allied had not answered, O'Diah was free to withdraw his action against Allied voluntarily and without
     obtaining permission from the court. Rule 41(a)(1), Fed.R.Civ.P.; see also Hester Indus., Inc. v. Tyson Foods, Inc., 160
     F.3d 911, 916 (2d Cir.1998).

11   While the Eleventh Amendment does not bar damages suits against state officials in their individual capacities or suits
     for prospective injunctive relief against state officers, see Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d
     476, 480 (2d Cir.2002); Huang v. Johnson, 251 F.3d 65, 69–70 (2d Cir.2001), O'Diah has not sued any individuals and
     asserts claims only against New York State and two of its agencies.

12   In a Section 1983 action for use of excessive force, false arrest or other violations of federal rights, the proper
     defendant is the individual officer responsible for the alleged violation, unless a plaintiff is proceeding under a Monell

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

theory. O'Diah may replead his claims that his rights under federal law were violated by filing separate lawsuits against the responsible individual officers in the jurisdictions in which the incidents occurred. If the plaintiff does not know the names of the individual officers, he may file a "John Doe" complaint, provide sufficient facts regarding the incidents to state a claim and to assist in identification of the officers, and seek the court's assistance in obtaining identification of the officers from their employers. *See Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir.1997).

13    It should also be noted that to the extent O'Diah wishes to pursue a claim against the office of the District Attorney, his claim is not sufficiently pled as a *Monell* claim. To the extent O'Diah wishes to pursue this claim against the District Attorney individually, there is no indication from the allegations in the complaint that the District Attorney was personally involved in the conduct alleged.

14    O'Diah provides no factual background for these serious allegations. Defendants Ford, Volkswagen Credit and Volkswagen also ask the Court to strike these "scandalous" allegations pursuant to Rule 12(f), Fed.R.Civ.P. *See Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir.1988).

15    O'Diah has not alleged that he notified a consumer reporting agency which in turn notified the furnisher of the incorrect information.

16    The complaint may also be read to allege that O'Diah's "medical history and condition" were made public as a result of the defendants' false credit reporting. The FCRA does contain provisions addressing the improper use of information contained in consumer credit reports. The complaint does not identify what medical information is at issue, who provided this information and to whom, or how it was made public. Each of these facts is a critical piece of information that any defendant would need to answer the allegation.

17    All claims against Judge Ehlers and the Village of Flower Hill are dismissed pursuant to the doctrine of judicial immunity as discussed above, or in the case of any attempted *Monell* claim against the Village of Flower Hill, dismissed with prejudice for failure to state a claim. Defendants Braunstein and Judge Wexler have neither answered nor moved to dismiss, although affidavits of service have been filed.

18    On the first page of his complaint, O'Diah has indicated his intent to pursue a claim for breach of fiduciary duty. There are no specific allegations in the complaint, however, which relate to such a claim nor are there allegations indicating which defendant or defendants against whom such a claim may be asserted, and the plaintiff has not alleged that any of the defendants named in this action owed him a fiduciary duty nor has he alleged any circumstances which would normally give rise to such a duty. A fiduciary is one who "owes to another the duties of good faith, trust, confidence, and candor" or one who has been entrusted with another's money or property and "must exercise a high standard of care in managing" it. Black's Law Dictionary 640 (7th ed.1999). For example, a trustee is a fiduciary of the beneficiaries of a trust, and a corporate officer is a fiduciary of shareholders in a corporation. In his sur-reply to the defendants' motions to dismiss, O'Diah indicates that his breach of fiduciary duty claims are directed at the Port Authority and Judge Ehlers. With the exception of one claim against the Port Authority, the claims against both of these defendants have been dismissed with prejudice on the grounds of *res judicata* and judicial immunity, respectively. In any event, neither defendant had a fiduciary relationship to O'Diah. The plaintiff was apparently a passenger on a Port Authority bus and alleges that the Port Authority breached a promise to pay all medical expenses incurred following an accident. Judge Ehlers presided over eviction proceedings brought by Northern Glen against the plaintiff.

19    O'Diah has attached to his complaint copies of notices to consumers pursuant to the New York and Massachusetts lemon laws.

20    O'Diah's parallel claims against Puro and Sears are barred by the doctrine of *res judicata*.

21    O'Diah's allegations against his former employers for unlawful termination of his employment arise from his contention that others—such as New York State and Nassau County—provided his employers with "false information." Consequently, the wrongdoing at issue may be the defamation claims addressed below.

22    I.C. Systems has submitted an affidavit with attachments demonstrating that it made its credit report in early December 1997, and that O'Diah wrote to it and accused it of violating the FCRA in late December 1997. If O'Diah learned of the alleged violation in 1997, then his claims for defamation, libel and slander would be barred by New York's one year statute of limitations. N.Y. C.P.L.R. § 215(3). O'Diah notes that sanctions may be imposed on any litigant knowingly making a false statement to a court. *See Rule 11, Fed.R.Civ.P.*

23    The Mercy defendants indicate that the evidence will show that O'Diah was treated for chronic sinusitis and hearing

O'Diah v. New York City, Not Reported in F.Supp.2d (2002)

loss, services unrelated to any bus accident.

24    Piping Rock has made no motion **to dismiss**.

25    Although the **plaintiff** has sued both Volkswagen of America, Inc. and Volkswagen Credit, Inc. in this action, the allegations in the complaint refer only to "Volkswagen."

26    The **plaintiff** may have filed a fifth suit. Ford indicates that it **has** previously **been** sued by the **plaintiff** in California.

---

**End of Document**                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.