

**Law Office of David Wims**

1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
Phone: (646) 393-9550
Fax: (646) 393-9552
email: dwims@wimslaw.com
http://www.wimslaw.com

August 14, 2017

## BY ECF & FED EX

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
Attn: Honorable Magistrate Judge James Orenstein

Re:     **Bonn-Wittingham *et al* v. Project O.H.R. *et al* (16CV0541)(JO)**

Dear Magistrate Judge Orenstein:

We represent Plaintiffs in this action against Defendants, Project O.H.R. (Office for Homecare Referral), Inc. and D'Vorah Kohn ("Defendants"), and we submit this joint letter for the Court's assessment and approval of the proposed settlement agreement ("Agreement") reached between the parties, a copy of which is attached hereto as Exhibit 1.[1]  Although Metropolitan New York Coordinating Council on Jewish Poverty ("Met Council") was dismissed from the action on a motion to dismiss, it is part of the settlement and is receiving a full release from each of the remaining sixty-two (62) plaintiffs ("Remaining Plaintiffs") who have claims remaining in the case.

Therefore, Defendants and Met Council, along with the Remaining Plaintiffs, are hereby respectfully requesting that the Court approve the Agreement because it represents a fair resolution of this matter based on the risks, negotiated at arm's length between experienced counsel.  The Agreement was facilitated by several conferences with the Court, a private mediation, and private settlement talks thereafter which involved extensive payroll document review and analysis.

---

[1] Counsel asks the Court to approve the proposed settlement agreement without signatures given the number of instant Plaintiffs, in an effort to avoid Plaintiffs having to sign multiple times.

The Agreement resolves the claims of the Remaining Plaintiffs whose claims survived Judge Ross' December 12, 2016 Opinion and Order ("Dismissal Order"). In the Dismissal Order, the Court dismissed the First and Third Causes of Action (FLSA and NY Minimum Wage) in their entirety, leaving the Second, Fourth and Fifth Causes of Action. The Court's decision would allow the following former employees an opportunity to try to prove damages stemming from working 4 or more 24-hour live in shifts per week:

1. Akhtamova, Barno;
2. Artamoshina, Lyudmilla;
3. Berdnkova, Lidiya;
4. Bunkowska, Krystyna;
5. Daly, Cicely;
6. Grand-Pierre, Marie;
7. Jean, Anatalie;
8. Jenkins, Priscilla;
9. Korinteli, Neli;
10. Lewis, Jemma;
11. Malmon, Danuta;
12. Plaisir, Marie;
13. Shaposhnik, Svetlana; and
14. Werynska, Janina.[2]

Pursuant to the Dismissal Order, the following Plaintiffs[3] were to be allowed to proceed forward on claims of overtime provided they could prove they worked 4 or more 12-hour shifts in a given week:

1. Afreh, Marie;
2. Alexander, Bettyanne;
3. Antoine, Gerda;
4. Ariza, Alma;
5. Armonavica, Ludmilla;
6. Auguste, Immacula;
7. Bartold, Miroslawa;
8. Brice, Jeanette;
9. Bunbury, Sophi;

---

[2] Daisy Castillo was also spared dismissal of these claims, but has voluntarily dismissed her claims.
[3] The Court had spared a total of 52 plaintiffs' claims, but the following persons' claims were either voluntarily dismissed or dismissed for failure to make discovery: Olga Cadet, Fara Chacan, Digna Garcia, Paula Garcia, Walterine Levius and Carmen Toribio.

Law Office of David Wims                                                                 8/14/2017

10. Caldwell, Beverly;
11. Chernina, Asya;
12. Clarke, Elaine;
13. Cosmas, Patricia;
14. Crandon, Roseanne;
15. Cuvilly, Florence;
16. Deshields, Unicey;
17. Dorismond, Immacula;
18. Edwards, Shirley;
19. Fleurimont, Marie;
20. Garcia, Mercedes;
21. Garvey, Anna;
22. George, Unica;
23. Gomez, Ana M.;
24. Gorbacheva, Eugenea;
25. Grant, Vanetta;
26. Hamilton, Eliza;
27. Hamilton, Juilette;
28. Ineus, Lucy;
29. James, Thelma;
30. Javier, Ramona;
31. Jean-Bart, Yolande;
32. Jessamy, Catherine;
33. Kisina, Marina;
34. Leacock, Joan;
35. Liriano, Consesora;
36. Longuefosse, Marie ;
37. Lopez, Esther;
38. Lubin, Anita;
39. Maragh, Joan;
40. Monpremier, Marie;
41. Paredes, Candida;
42. Pownall, Carmen;
43. Roslaniec, Barbara;
44. Rudnicki, Teresa;
45. Soriano, Marianela;
46. Stafford, Eunice;
47. Thomas, Myrna; and
48. Wright, Morine.

The claims of the balance of the Plaintiffs were encompassed within the Dismissal Order. The claims of those Plaintiffs are not resolved in the proposed settlement agreement, and those parties will be limited to their appellate rights upon approval of the Agreement.

The parties have resolved the claims as to the Remaining Plaintiffs for a lump sum payment of $325,000.00, of which Plaintiffs' counsel shall be entitled to $100,000.00 of said sum as compensation for attorneys' fees and costs, with the further proviso that no portion of the settlement shall be regarded as payment for liquidated damages or interest, which claims are subsumed in the payment and waived.

We further request that the Court approve our firm's attorneys' fees and litigation costs in the amount mentioned above, which is a substantial reduction based on the lode star method. For the purposes of settlement, Defendants take no position with respect to the reasonableness of our request for attorney's fees, which shall be capped at the amount noted above, which represents 30.76% of the total settlement.

## The Settlement Agreement is Fair and Reasonable

As Plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015).

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[4] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club*

---

[4] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

*Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement).  In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012)(citations and quotation marks omitted).  As well, Courts must consider "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008).

Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC,* 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the Agreement allows the Remaining Plaintiffs to avoid the time, uncertainty, costs and stress that they would undergo if this case proceeded to summary judgment motion practice and then trial.  The early stage of this litigation (ie., prior to trial and a lengthy appeal) was one of the factors that induced the Remaining Plaintiffs to reach a compromise.

As the Court is aware, the Remaining Plaintiffs claim that they can avoid the companionship exemption for home health aides and personal care attendants by proving that they performed "heavy household" chores during twenty (20%) or more of their work time, and/or that they can avoid applicable exemptions during sleep in shifts by virtue of the fact that they purportedly received less than five (5) continuous hours of sleep and three (3) uninterrupted hours for meals on each shift. The Remaining Plaintiffs also claim that they were not paid at time and a half their hourly rate, or minimum wage, for all hours which exceeded forty (40) in a given week.  Lastly,

the Remaining Plaintiffs also assert claims for wage notice violations and wage statement violations.

Based on information available to the Remaining Plaintiffs, including extensive payroll records, available paystubs, the governing Collective Bargaining Agreement with all applicable amendments ("CBA"), personnel files, coupled with the admissions made by the Remaining Plaintiffs through Responses to Requests for Admission, Answers to Interrogatories, and (in the case of many of the Remaining Plaintiffs), oral testimony at deposition, a potential value of $550,000 inclusive of liquidated damages, is placed on the Remaining Plaintiffs' claims. Given the risk of proceeding to trial and the distinct possibility that many of the Remaining Plaintiffs' claims might not survive summary judgment, the settlement amount was reached through negotiations based on the controlling law and facts at bar.

As for Met Council and D'vorah Kohn, they have asserted from the outset that they did not have the status of employer. In the case of Met Council, it was dismissed from the action. Of course, since the recoverable damages are limited, they would be equally limited as against Ms. Kohn, who (along with Met Council) will be gaining a full release from the Remaining Plaintiffs.

On the issue of liquidated damages, all Defendants have taken the position that liquidated damages are not appropriate. This is because OHR had a policy that its attendants perform a maximum amount of heavy household chore work and, further, that the attendants report any issues with sleep and meal breaks. It is Defendants' position that liquidated damages should not be available given the lack of evidence of complaints.

In sum, there is a *bona fide* dispute between the parties regarding the Remaining Plaintiffs' wage and hour claims, including but not limited to the amount and extent of work performed by Plaintiffs and the applicability of the companionship exemption. The instant settlement constitutes the parties' effort to resolve same in an amicable fashion through arm's length bargaining and with the Court's assistance.

Attach to the Agreement as Exhibit 1 is a breakdown of how much each Plaintiff will receive from the settlement, net of the amount of legal fees for which we request Court approval below. Using available payroll records, we developed a formula for allocating the settlement proceeds that is

based upon the relative strengths and weaknesses of each case, and which provided more to those of the Remaining Plaintiffs who were given the opportunity to proceed with claims for compensation relating to "sleep in" shifts.

Each Plaintiff is receiving approximately 70% of the maximum amount of overtime that he or she could recover, based on our most optimistic calculations. Our staff has met with each of the Remaining Plaintiffs to ensure that each of them has been told how the settlement proceeds have been allocated. All of the Remaining Plaintiffs have voiced their approval of the process and amounts payable to each of them. Most of the Remaining Plaintiffs' tenures fall outside of the FLSA statute of limitations, such that the majority of their claims are actually under the NYLL.

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of extensive negotiations, including a settlement conference before the Court. As well, it is likely that substantive answers to the issues disputed by the parties would not be resolved until after significant further motion practice, and a trial.

We believe that, in light of the uncertainties associated with establishing the Remaining Plaintiffs' precise number of overtime hours and their strong desire to avoid future legal proceedings, the amounts payable to each Plaintiff (approximately 70% of overtime owed) falls within the range of reasonableness. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)"). Here, the parties were able to reach an agreement at a relatively early stage of proceedings, before any trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016) (citing early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that the Remaining Plaintiffs would prevail on their claims, much less be awarded liquidated damages under FLSA or NYLL, if this matter were to proceed to trial.

Moreover, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length

negotiations over several months, including a private mediation. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial portion of possible recovery under the FLSA and NYLL. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to the Remaining Plaintiffs' ability to continue this FLSA and NYLL litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

Finally, it cannot be disputed that the proposed settlement agreement was the product of negotiations which were devoid of any semblance of fraud or collusion. Indeed, negotiations between the Parties were contentious, such that a lengthy settlement conference before your Honor was required to bridge the gap between their positions, followed by even more discussions over a three week period.

## **Application for Attorneys' Fees**

Under both the FLSA and NYLL, the Remaining Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of Plaintiffs' counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In *Gaspar v. Personal Touch Moving, Inc.,* 13 Civ. 8187 (AJN), 2105 WL 7871036 at * 2 (S.D.N.Y. Sept. 15, 2014), the Court noted that "[f]ee awards representing one third of the total recovery are common in this District." In this case, the task of calculating overtime for sixty two Plaintiffs was particularly difficult because these claimants are necessarily claiming that they were relieved of applicable exemptions during certain periods by virtue of the type of work they were doing. We undertook an arduous and time-consuming process of relying on records and the recollections of each Remaining Plaintiff.

In this case, there were extensive negotiations that took place after the parties' mediation earlier this year, and the settlement conference with Your Honor. Plaintiffs' counsel represents the

| Law Office of David Wims | 8/14/2017 |
|---|---:|

Remaining Plaintiffs on a contingent basis. Our firm's time spent on this matter and the expenses that we reasonably incurred are set forth in the accurate, detailed and contemporaneous records attached to Plaintiffs' counsels' declarations. Because a settlement was reached at this relatively early stage of the proceedings, our firm has agreed to reduce our contingency to 30.67%.

The attorneys and staff at my firm who were involved in this case, and whose time is reflected in the attached billing records, are reflected in the attached declarations. We respectfully request that the Court approve the proposed settlement agreement, as well as the amount of legal fees requested herein.

Thank You for Your time and consideration. Feel free to contact me with questions or concerns.

Respectfully yours,

/s/

David C. Wims, Esq. (DW-6964)

Cc: Kevin J. O'Connor, Esq. (By ECF)
Audley S. Foster, Esq. (By ECF)
Roland Ottley, Esq. (By ECF)
Alexander S. Gutierrez, Esq. (By ECF)
Abel Pierre, Esq. (By ECF)
Joseph Michael Vento, Esq. (By ECF)